579 A.2d 948

**COMMONWEALTH of Pennsylvania**

v.

**Abraham WOODALL, Appellant.**

Superior Court of Pennsylvania.

Argued May 9, 1990.

Filed Aug. 31, 1990.

Anne N. John, Uniontown, for appellant.

Before WIEAND, DEL SOLE and HESTER, JJ.

DEL SOLE, Judge.

Abraham Woodall appeals from the judgment of sentence of two to five years imprisonment, consecutive to a sentence in a prior case, following conviction by a jury of receiving stolen goods based upon the sale of a stolen automobile. Appellant filed a Motion for a New Trial and In Arrest of Judgment claiming that the prosecution violated his constitutional right to a fair jury by exercising its peremptory challenge to exclude the sole black individual on the venire panel. On appeal, the Superior Court affirmed the judgment of sentence in part and remanded the case to the Common Pleas Court of Fayette County in order to determine whether the prosecuting attorney had a valid and neutral explanation for striking the juror. A hearing was held on the matter and the trial court concluded that the Commonwealth had a legitimate reason for striking the juror. Appellant's Motion for New Trial and In Arrest of Judgment upon remand was denied. We reverse.

The issue is whether the trial court erred in its application of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1987), and by concluding that the Commonwealth had a valid, neutral explanation for striking the single black venireperson. We remanded this case to the trial court concluding that it erred in its conclusion that Appellant had failed to establish a prima facie case of discrimination under *Batson, supra*. We relied on *Commonwealth v. Jones*, 374 Pa.Super. 493, 543 A.2d 579

(1988), allocator granted, 521 Pa. 610, 557 A.2d 342 (1989), which held that "the prosecution's use of a peremptory challenge to eliminate the only member of the defendant's race raises an inference of discrimination and entitles defendant to an explanation." *Id.* at 500, 543 A.2d at 582. Jones was not available to the trial court when it initially commenced this case.

In *Jones,* during jury selection, the trial court permitted the prosecuting attorney to strike the only prospective black juror. The prosecution challenged the juror on the basis that she lived in the same town as the co-defendant's alibi witness, and, the community being close-knit, the juror or one of her ten children might know the witness. With the filing of post-trial motions, the trial court reconsidered its position deciding that the prosecutor's reasons for striking the juror were insufficient because the co-defendant's alibi witness was not a party or a witness in Jones' case; furthermore, another juror, a white male, who lived in the same town as the black juror, was not struck.

We affirmed the trial court in *Jones* making the following statement:

> It is obvious to this Court, as it was to the court below, that the reasons proffered by the prosecution for its actions were merely veiled attempts to exclude the only black person on the list of prospective jurors because of her residence or the number of siblings she had who might know of Ms. Ferguson—transparent reasons not justifying the action taken in removing Ms. Savage from the juror selection process. *Id.* at 501, 543 A.2d at 583.

Instantly, since it has already been decided by this court that Appellant had established a prima facie case of discrimination in the process of selecting a jury by excluding the only black prospective juror in his case, we now focus on whether the Commonwealth has sustained its burden to come forward with a neutral explanation for challenging the black juror as required by *Batson,* 476 U.S. at 97, 98, 106 S.Ct. at 1723.

We are reminded by *Commonwealth v. Jackson,* 386 Pa.Super. 29, 562 A.2d 338 (1989) that our standard of review, in a case such as this, is limited. In *Jackson,* we stated that:

"[A] Finding of intentional discrimination is a finding of fact entitled to appropriate deference by a reviewing court. Since the trial court's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference. Thus, an appellate court will reverse a trial court's finding of no discrimination only if that finding is clearly erroneous. *Id.* at 349, 350. (Citations omitted).

As enumerated in *Commonwealth v. Jackson,* where it has been determined that the defendant has established a prima facie case of discrimination, the prosecution's explanation must satisfy certain minimal requirements to qualify as legally sufficient. We reiterate those requirements here:

First, the prosecutor's proffered explanation must be "clear and reasonably specific." *Batson,* 476 U.S. at 98 n. 20 [106 S.Ct. at 1724 n. 20]. A prosecutor "may not rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirm[ing] [his] good faith in making individual selections.'" *Id.* 476 U.S. at 98, 106 S.Ct. at 1724 (citations omitted). Instead, the prosecutor should independently justify each strike that he exercised against a member of the defendant's minority group.... Second, the prosecutor's proffered explanation must consist of "'legitimate reasons' for exercising the challenges." *Batson,* 476 U.S. at 98 n. 20, 106 S.Ct. at 1724 n. 20. This is a broad category. "[T]he prosecutor's explanation need not rise to a level justifying exercise of a challenge for cause." *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723.... Third, the prosecutor's proffered explanation must be rejected if it is pretextual. See e.g., *Garret v. Morris,* 815 F.2d 509 (8th Cir.1987), cert. denied, 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 191 (1987); *Commonwealth v. Jackson,* 562 A.2d at 350.

In the present case, attorney David P. Reiss was called as a witness at the hearing to ascertain whether he could provide an explanation that would satisfy the three prong test set forth in *Jackson*. At this proceeding, Attorney Reiss responded to the Assistant District Attorney's questions as follows:

Mr. Korner: Would you enlighten the court as to the manner and criteria that you would utilize, when you were in the District Attorney's Office, of striking jurors peremptorily.

Mr. Reiss: There are many factors that I used in exercising the peremptory challenges. They include the type of clothes that they wore, whether they were old, whether they were unemployed or employed, whether they had children or had no children, where they lived in relation to where the act took place, if they were asked a question whether or not they had been involved in any matter with the court, whether or not they had ever sat on a jury before, how recently to the action involved that they were sitting in. Those are just some of the various factors.

Mr. Korner: Calling your attention to this case, do you recall that there was one black juror on that panel?

Mr. Reiss: I don't recall that.

Trial Court Opinion of October 26, 1989, pp. 2–3.

Our first inquiry is whether the prosecutor's explanation was clear and reasonably specific. The explanation provided by Attorney Reiss for striking the juror contained various factors that he used when exercising peremptory challenges; however, he failed to give a clear, reasonably specific explanation for striking the only black juror in Mr. Woodall's case. In fact, Mr. Reiss did not provide any explanation whatsoever since, according to his testimony, he could not recall that a black person was even on the panel which makes this case easily distinguishable from *Jackson*.

In that case, although the prosecutor was not asked for a racially neutral explanation for his strikes until four months after *voir dire*, he was still able to articulate legally suffi-

cient reasons for the challenges. The prosecutor used peremptory challenges to strike a man because his uncle had been arrested, another was struck because he appeared to be uncooperative and hostile during voir dire, one was struck because his employment kept him in contact with Philadelphia police officers and the last four were struck due to their familiarity with the area where the crime took place.

We recognize that more than sixteen months elapsed since the *voir dire* proceeding at issue in this case and that such a delay is an impediment to the resolution of a *Batson* claim. *See Jackson,* 562 A.2d at 348. It should also be noted that the *voir dire* proceedings in this case were not transcribed. *Commonwealth v. Woodall,* 393 Pa.Super. 642, 564 A.2d 1009 (1989). We cannot, however, neglect to properly apply the standards set forth in *Batson* or *Jackson* because the prosecution failed to provide a valid, neutral explanation for striking the black juror. Race was not a factor mentioned by Attorney Reiss as one of the criteria that he used to strike a juror; nevertheless, precedent calls for a clear and reasonably specific explanation for the strike which was not present here.

Second, the prosecutor's explanation must contain legitimate reasons for exercising the challenge. We encounter the same problem here as we did above. Since the prosecutor cannot recall the case or the black juror, he cannot articulate legitimate reasons for striking the juror in this particular case. Any of the above mentioned criteria referred to by the prosecutor during the hearing would suffice as a legitimate reason, but Attorney Reiss did not refer to any of these criteria with respect to the challenged juror in this case. The basis for the requirement of having legitimate reasons for striking a venireperson where the defendant has established a prima facie case of discrimination is very important and is well put in *Batson:*

> [T]he prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assump-

tion-or his intuitive judgment-that they would be partial to the defendant because of their shared race. Just as the Equal Protection Clause forbids the States to exclude black persons from the venire on the assumption that blacks as a group are unqualified to serve as jurors, so it forbids the States to strike black verniremen on the assumption that they will be biased in a particular case simply because the defendant is black..... Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or "affirm[ing] [his] good faith in making individual selections." If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause "would be but a vain and illusory requirement." *Batson*, 476 U.S. at 97, 98, 106 S.Ct. at 1723, 1724.

Since Appellee has not proffered any reason, legitimate or illegitimate, we shall examine the last prong of the test.

Third, the prosecution's explanation must be rejected if it is pretextual. It would be difficult to consider the prosecutor's general statement of criteria for striking jurors pretextual. If the prosecutor had advanced a fictitious reason or motive to conceal the real reason for the strike then we would consider the explanation pretextual. Without an explanation pertaining to the strike in this case, we do not find that the prosecutor proffered a pretextual explanation for his actions.

Thus, we conclude that the trial court erred by its determination that the prosecution provided a racially neutral explanation for striking the only black juror in this case. The prosecutor's testimony that he could not recall the juror in this matter will not satisfy the three prong test in *Jackson*. Therefore, we reverse and remand to the trial court for proceedings consistent with this decision.